**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| American Airlines, Inc., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| Open Source Matters, Inc., | ) | |
| CloudAccess.net, LLC, | ) | |
| XYZ Corporations 1 through 100, | ) | **JURY TRIAL DEMANDED** |
| John Does 1 through 100. | ) | |
| *Defendants.* | ) | |
| | ) | |

**COMPLAINT**

Plaintiff American Airlines, Inc. ("American" or "Plaintiff"), by their attorneys, bring this action to enjoin Defendants' infringement of Plaintiffs' trademarks and copyrights and fraudulent activity.  Defendants are using a counterfeit domain name and website to trick consumers in the United States into believing Defendants are American in order to obtain the consumers' login credentials which will enable Defendants to obtain the consumers' confidential personal data from American's website and from other websites. American seeks preliminary and permanent injunctive relief and all other remedies available under the laws of the United States and the State of New York and alleges as follows:

**NATURE OF ACTION**

1.     This is an action for trademark infringement, counterfeiting, unfair competition, and cyberpiracy under the Lanham Act, 15 U.S.C. § 1051, et seq., for copyright infringement under 17 U.S.C. § 101 et seq., for violation of New York's Deceptive Trade Practices Act under N.Y. GBL § 349, and for fraud under the common law of New York.

## THE PARTIES

2.      Plaintiff American Airlines, Inc., ("American') is a Delaware corporation with a principal place of business at 1 Skyview Drive, Fort Worth, Texas, 76155.

3.      Open Source Matters, Inc. ("Open Source Matters" or "Joomla") is a non-profit corporation incorporated in the State of New York and headquartered in New York City.  On information and belief, its principal place of business is located at 995 Broadway FL 17 New York, NY 10023.  Open Source Matters owns and controls the domain <joomla.com>, and at least has administrative control over the website at <americanairlines.joomla.com>.

4.      CloudAccess.net LLC ("CloudAccess") is a limited liability company with its principal place of business at 221 Garland Street Suite 2E Traverse City, MI 49684. CloudAccess sells website hosting services and hosts the website at <americanairlines.joomla.com>.  CloudAccess is the default hosting provider for users who register to create a website via Joomla.org but do not wish to secure their domain name. On information and belief, CloudAccess has a contractual relationship with Joomla relating to hosting websites of users who wish to have their websites hosted at the <joomla.com> domain.

5.      XYZ Corporations 1 through 100 are entities who, on information and belief, created and operate the website at <americanairlines.joomla.com>.

6.      Defendants John Doe 1 through 100 are individuals who, on information and belief, created and operate the website at <americanairlines.joomla.com>.

7.      On information and belief, the defendant XYZ Corporations are foreign entities.

8.      On information and belief, John Does 1-100 do not reside in the United States.

9.      Open Source Matters, CloudAccess, XYZ Corporations, and John Does are collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this Complaint pursuant to 28

U.S.C. §§ 1331, 1337, and 1338(a) and (b), because the claims address federal questions

concerning the Lanham Act, Cybersecurity under 15 U.S.C. § 1125(a), trademark infringement

of federally registered trademarks pursuant to 15 U.S.C. § 1114, federal unfair competition

pursuant to 15 U.S.C. § 1125(a), and copyright infringement pursuant to 17 U.S.C. § 501.

11.     This Court has jurisdiction over the claims in this action that arise under the laws

of the State of New York pursuant to § 28 U.S.C. § 1367(a), because the state law claims are so

related to the federal claims that they form part of the same case or controversy and derive from

a common nucleus of operative fact.

12.     This Court has personal jurisdiction over Defendants because American's claims

for trademark infringement, counterfeiting, unfair competition, and cybersecurity arise from acts

conducted and harm sustained in the State New York.  Defendants directly target consumers in

the United States, including New York, through at least the website at

<americanairlines.joomla.com>.  Specifically, Defendants reach out to New York consumers by

operating a website bearing counterfeit imitations of American's trademarks and copyrights

through which New York residents can submit their legitimate American login credentials. These

credentials can then be used to obtain the consumers' personal information from American's

website and systems, and to access other computer systems.  Each of the Defendants is

committing tortious acts directed at New York consumers, is engaging in interstate commerce,

and has wrongfully caused Plaintiffs substantial harm in the State of New York.

13.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions which gave rise to this claim occurred in this district.

Particularly, Joomla is headquartered in this district, created and maintains the technology underlying its web hosting platform in this district, and entered into contracts with CloudAccess, John Does 1-100 and XYZ Corporations 1-100 from this district. These contracts relate directly to the infringing website at <americanairlines.joomla.com>. Further, John Does 1-100 and XYZ Corporations 1-100 are, through this infringing website, targeting consumers nationwide, including consumers in this district.

## FACTUAL BACKGROUND

## AMERICAN AIRLINES' VALUABLE RIGHTS

14.     American is the second largest air carrier in the world and enjoys a reputation in the United States and internationally as a premier airline for business and leisure travelers. American and its affiliates serves hundreds of destinations in dozens of countries, with thousands of daily flights.

15.     During its more than 90-year history, American has developed global name-recognition and goodwill and has become a household name. A significant component of American's success has been its investment in its brand and intellectual property. For decades, it has used and continues to use the trade name "American Airlines" and numerous trademarks and service marks such as AA, AMERICAN AIRLINES, and the "Flight Symbol," both alone and in connection with other words and designs. American's brands, trade names, and other intellectual property are the result of significant investment and worth billions of dollars.

16.     To protect its significant investment in the American Marks, American registers its trademarks with the United States Patent and Trademark Office ("USPTO") on the Principal Register. American also registers its trademarks in many other countries throughout the world.

17.     American's registered American Marks include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| **AMERICAN AIRLINES** | 4939082 | April 19, 2016 | (Int'l Class: 35)<br>Sales promotion; promoting the goods and services of others by means of a loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private club membership; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise.<br><br>(Int'l Class: 37)<br>Repair and maintenance of aircraft, vehicles, aircraft-related facilities, baggage-related facilities, and air travel-related facilities; refueling of aircraft and land vehicles; ground support services in the field of air transportation, namely, aircraft de-icing services, aircraft interior and exterior cleaning, and sanitation.<br><br>(Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing air transportation reservation services for others, providing vehicle reservation services for others, providing cruise reservation services for others, and providing vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network; providing lounge facilities, namely, airport services featuring transit lounge facilities for passenger relaxation and also including shower facilities<br><br>(Int'l Class: 41)<br>Providing online electronic publications, namely, online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight entertainment |

| | | | |
|---|---|---|---|
| | | | services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of an inflight entertainment system; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of a personal computer or tablet.<br><br>(Int'l Class: 43)<br>Food and drink catering; providing food and beverage services in conjunction with providing facilities in the form of a private club for conducting business, meetings and conferences; providing conference room facilities, food and beverage lounge facilities, and amenities, namely, food, drink, catering, and restaurant; providing hotel reservation and coordination services for others by means of a global computer network; travel agency services, namely, making reservations and booking for temporary lodging; entertainment services, namely, providing a general purpose arena facility for sports, entertainment, trade shows, exhibitions and conventions. |
| **AMERICAN AIRLINES** | 5279167 | September 5, 2017 | (Int'l Class: 09)<br>computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices, namely, software for tracking and redeeming loyalty program awards; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status<br><br>(Int'l Class 38)<br>Providing Internet access |
| **AMERICAN AIRLINES** | 5592865 | October 30, 2018 | (Int'l Class 36)<br>Issuance of credit cards through a licensee |

| | | | |
|---|---|---|---|
| **AMERICAN AIRLINES** | 5573314 | October 2, 2018 | (Int'l Class 25) Clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class 28) Toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes; playing cards<br><br>(Int'l Class 36) Banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; Issuance of credit cards through a licensee |
| Design Only  | 4449061 | December 10, 2013 | (Int'l Class: 39) air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation transportation reservation services by means of a global computer network; providing information in the field of travel by means of a global computer network |
| Design Only  | 5559145 | September 11, 2018 | (Int'l Class: 39) air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; airport ramp services; transporting aircraft at airport; providing aircraft parking and storage; aircraft towing; transportation services, namely, checking of baggage; airport services featuring transit lounge |

| | | | |
|---|---|---|---|
| | | | facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities; air passenger wheel-chair services at airport; leasing of aircraft; leasing of components of aircraft; leasing of aircraft engines; transporting of aircraft engines for others; airport services featuring transit lounge facilities for passengers |
| AMERICAN AIRLINES AADVANTAGE and Design  | 5360206 | December 19, 2017 | (Int'l Class 35) promoting the goods and services of others by means of discount program and an incentive awards program whereby purchase points are awarded for purchases made by vendor subscribers or travel made conducted by member subscribers which can then be redeemed for merchandise and travel; online retail stores services featuring gift cards and private club membership; Promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise<br><br>(Int'l Class 39) air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation travel reservation services for others by means of an incentive rewards program.<br><br>(Int'l Class 41) providing online electronic publications, namely, an online magazine and an online newsletter<br><br>(Int'l Class 43) providing food and beverage services for others and hotel accommodation services for others by means of an incentive rewards program, namely, providing hotel accommodation reservation services for others and providing restaurant reservation services for others. |
| AMERICAN | 2381172 | August 29, 2000 | (Int'l Class: 41) Publication of magazines |

| AIRLINES PUBLISHING | | | |
|---|---|---|---|
| AMERICAN AIRLINES TRAVEL CENTER | 2524571 | October 9, 2001 | (Int'l Class: 39)<br>transportation of passengers and cargo by air. |
| AMERICAN AIRLINES FEDERAL CREDIT UNION | 2728688 | June 24, 2003 | (Int'l Class 36)<br>financial services for credit union members, namely financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, financial planning, and life, property and casualty insurance products, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services. |
| AA and Design  | 4004914 | August 2, 2011 | (Int'l Class 39)<br>transportation of passengers by air |

18.     The above AMERICAN AIRLINES, AA, and  ("Flight Symbol") trademark registrations are referred to hereinbelow as the "American Marks."

19.     The trademark registrations for the American Marks are valid and subsisting. Copies of these are attached collectively as **Exhibit A**.

20.     American also seeks to protect its investment in its brand by registering designs with the U.S. Copyright Office.  American owns U.S. Copyright Registration Number VA0002130520 for the Flight Symbol.  American's copyright registration for the Flight Symbol is referred to hereinbelow as the "American Copyright."

21.     Over the past several decades, American has used the American Marks and American Copyright, both alone and in combinations with other words and designs, in connection with travel and transportation services, among numerous other goods and services, in

interstate commerce.  For example, American uses the American Marks and American Copyright in connection with the term "Cargo," as shown below:



(the "American Airlines Cargo" Mark).

22.     In addition to its registered rights, American has strong common-law rights in the American Marks and the American Airlines Cargo Mark by virtue of extensive use and promotion in commerce.

23.     The American Marks serve as unique and famous source identifiers for American's transportation services of passengers, cargo, and freight.

24.     American also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

25.     American has extensively used its American Marks on its website to promote travel and transportation services.  Screenshots of American's website at <aa.com> is attached as **Exhibit B**.

26.     American also uses the American Marks and the American Airlines Cargo Mark on its cargo-specific website at <aacargo.com> ("American Cargo Website").  Screenshots of the American Cargo Website are attached as **Exhibit C** and reproduced below.



27. On the American Cargo website, customers have the ability to login to a personal account, as well as book cargo space for shipments, and track cargo shipments.

**THE JOOMLA AND CLOUDACCESS HOSTING PLATFORM**

28. Joomla is an open-source software company which provides Content Management System ("CMS") software for creating and operating websites. The Joomla CMS enables users to create websites and web applications and post them online.

29. Joomla encourages users to launch websites for free, without obtaining their own domain name, by offering to host the websites via a subdomain of <joomla.com>.  Joomla advertises: "Your **fully functional** Joomla website will be hosted on the CloudAccess.net Platform, it even includes FTP, PHPMyAdmin, and the ability to install extensions. You can

keep it as long as you login and click a "renew" button once every 30 days. The only limitations are 500MB of disk space, subdomain usage, and your imagination... but fear not, you can upgrade to remove the first two limitations starting at only $5/mo."

30.     In this instance, Joomla allowed a user to sign up for a free website, create a subdomain "americanairlines", and hoste a website at that subdomain (<americanairlines.joomla.com>).

31.     Joomla did not verify whether the person creating the free account was affiliated with American, and had Joomla made any effort to do so, would have quickly realized that the person creating the account was *not* affiliated with American.

32.     Joomla's own website located at https://launch.joomla.org has  a link at the bottom of the home page entitled "Report Abuse".  A screenshot of the Joomla platform website home page is attached as **Exhibit D**.  When this link is clicked a pop up box appears asking for the URL where the abuse is occurring, the reporter's email address, and a description of the abuse ("the Abuse Form").



33.     While Joomla provides the tools for a user to create an account, and to create a free website, Joomla does not itself host the free websites. CloudAccess provides the actual hosting service and, on information and belief, Joomla has entered into a contract with CloudAccess to provide this hosting.

34.     In this instance, CloudAccess is actively hosting the fraudulent <americanairlines.joomla.com> website.

### DEFENDANTS' WRONGFUL CONDUCT

35.     John Does 1-100 and XYZ Corporations 1-100 created a fraudulent website at <americanairlines.joomla.com>.  They are using counterfeits of the American Marks and the American Copyright to trick consumers into providing Defendants with their American Airlines login credentials. Once Defendants obtain these credentials, they can use them to access American's real website and access the consumers' personal and confidential account information contained there.  Defendants can also use these credentials to attempt to gain access to other websites (if the consumer uses the same login / password combination), and can sell these credentials to other computer hacking groups.

36.     John Does 1-100 and XYZ Corporations 1-100 created an account on the Joomla Platform called "AmericanAirlines" that incorporates the American Marks. Joomla and CloudAccess then created an "AmericanAirlines" subdomain and provided the tools other individual and corporate defendants needed to create a website. Defendants then created a Joomla-based website at <americanairlines.jooma.com> (the "Fraudulent Website"), which looks like the legitimate American cargo website. Screenshots of the Fraudulent Website are attached as **Exhibit  D**.

13

37.     The Fraudulent Website not only makes unauthorized use of the American Marks and American Copyright, but also uses the same images, color schemes and fonts of American's genuine websites.  Below is a side by side comparison of a page from American's Cargo Website and the Fraudulent Website:

| American's Cargo Website (Ex. C) | Defendants' Fraudulent Website (Ex. D) |
|---|---|
|  | |

38.     The Fraudulent Website collects confidential login credentials to the American website from consumers who believe they are logging into an account with American to track their cargo shipments.  Specifically, Defendants seek usernames, passwords and email addresses from consumers as shown below:



Please enter the email address associated with your User account. Your username will be emailed to the email address on file.

Email Address *

Submit

39.     On information and belief, this information collected from consumers is used to commit other crimes and frauds, including but not limited to, gaining unauthorized access to the consumers' accounts with American as well as to the consumers' social media accounts, bank accounts, credit history, and other personal accounts that may use similar usernames or passwords.

40.     American submitted complaints to both Joomla and CloudAccess regarding the Fraudulent Website, but Joomla and CloudAccess have not responded. On December 1, 2020, American submitted a complaint to CloudAccess requesting CloudAccess to immediately disable the Fraudulent Website. (**Exhibit E**).  On December 11, 2020, and January 29, 2021, American submitted complaints to Joomla again requesting that Joomla immediately disable the Fraudulent Website.  (**Exhibits F and G**).

41.     Neither Joomla nor CloudAccess ever responded to the Abuse Complaints.  They did not disable the Fraudulent Website and, on information and belief, did not take any other action against the Fraudulent Website.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114(1))

42.     American repeats and realleges each of the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43.     American owns valid federally registered trademarks for the American Marks, among others, for use in connection with goods and services in the airline industry, including air transport of people, cargo and freight.

44.     American's federally-registered trademarks are inherently distinctive, and continue to acquire further substantial distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of American's widespread and continuous use of the American Marks, the American Marks have become associated in the minds of the relevant purchasing public with American.  The reputation and goodwill that American has built-up in its American Marks is of great value to American.

45.     American has prior rights in the American Marks in connection with air transportation of people, cargo, and freight in the United States.

46.     Defendants have adopted designations and designs that are identical to or substantially indistinguishable from the genuine American Marks in appearance, sound, meaning, and commercial impression, such that consumers would likely confuse the respective marks, or cause mistake or deception as to the origin, sponsorship or approval of, Defendants' Fraudulent Website ("Counterfeit American Marks").  Defendants' adoption of Counterfeit American Marks includes, but is not limited to, use of those marks in domains and subdomains, the use of those marks in the website content itself.

47.     Defendants have used the Counterfeit American Marks in commerce with the offering of transportation services, namely tracking cargo shipments, in the United States without the approval or consent of American.

48.     Defendants' use of the Counterfeit American Marks without consent from American is a willful and intentional infringement of American's federally registered marks.

49.     On information and belief, Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit American Marks.

50.     The goodwill of American's business is of great value, and American will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of American.

51.     Defendants' aforesaid acts have caused and, unless acts are restrained by this Court, will continue to cause great and irreparable injury to American.

52.     American has no adequate remedy at law.

53.     By virtue of the aforementioned acts, Defendants have violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

## COUNT II
## CYBERPIRACY
## (15 U.S.C. § 1125(d))

54.     American repeats and realleges each of the allegations contained in Paragraphs 1 through 53 as if fully set forth herein.

55.     John Doe Defendants have registered, used, and are using the <americanairlines.joomla.com> domain name ("Fraudulent American Domain"), which is confusingly similar to the American Marks, to impersonate American and perpetrate fraud which constitutes a bad faith intent to profit from American's trademarks in violation of the Anticybersquatting Consumer Protection Act of 1999 codified at 15 U.S.C. § 1125(d).

56.     The American Marks were famous and distinctive at the time the Fraudulent American Domain was registered.

57.     Defendants have also caused and will continue to cause great and irreparable injury to American and, unless such acts are restrained by this Court, American will continue to suffer great and irreparable injury.

58.     American has no adequate remedy at law.

59.     By virtue of its aforementioned acts, Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

### COUNT III
### FEDERAL UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

60.     American repeats and realleges each and every allegation of Paragraphs 1 through 59 above, as if fully set forth herein.

61.     Defendants' actions, as described above, constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designates the origin of Defendants' services and related commercial activities as originating from or being approved by American, and thereby constitute a false description or representation used in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to American.

63.     American has no adequate remedy at law.

64.     By virtue of its aforementioned acts, Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### COUNT IV
### FEDERAL TRADEMARK DILUTION
### (Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

65.     American repeats and realleges each and every allegation of Paragraphs 1 through 64 above, as if fully set forth herein.

66.     The American Marks are famous and highly recognized by the general consuming public, and were famous and highly recognized by the general consuming public before Defendants' first use of its designation and before the actions complained of herein.

67.     Defendants' actions, as described above, dilute and are likely to continue to dilute the distinctiveness of the American Marks.

68.     On information and belief, Defendants engaged in the aforesaid acts with the intent to trade on American's reputation or to cause dilution of the famous American Marks.

69.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to American.

70.     American has no adequate remedy at law.

71.     By virtue of its aforementioned acts, Defendants have violated the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

## COUNT V
## UNLAWFUL DECEPTIVE ACTS AND PRACTICES
## (NY Gen Bus L § 349)

72.     American repeats and realleges each and every allegation of Paragraphs 1 through 71 above, as if fully set forth herein.

73.     Defendants materially misrepresented their relationship with American to consumers.

74.     Defendants knew that use of the American Marks in their domains and subdomains, and statements on their websites relating to their relationship with American were false and/or misleading.  Defendants' false advertising statements and omissions injure American as well as consumers.

75.     As a result of Defendants' actions, American has sustained, and will continue to sustain, harm to their valuable goodwill and reputation established in connection with the use and promotion of its American Marks, and other harm.

76.     On information and belief, consumers in New York have also been harmed by virtue of being tricked into providing sensitive personal information, which Defendants in turn have used or intend to use to compromise personal identities.

77.     Upon information and belief, Defendants' actions are willful, wanton, and/or in reckless disregard for the rights of American and consumers.

78.     Unless enjoined, Defendants' wrongful conduct will continue to cause great, immediate, and irreparable injury to American and consumers.

79.     American is without an adequate remedy at law.

80.     By virtue of their aforementioned acts, Defendants have violated the New York's Deceptive Acts and Practices Act.

## COUNT VI
## COMMON LAW FRAUDULENT BUSINESS PRACTICES
### (New York Common Law)

81.     American repeats and realleges each and every allegation of Paragraphs 1 through 80 above, as if fully set forth herein.

82.     Defendants are knowingly orchestrating a fraudulent scheme to trick consumers into providing sensitive personal information. New York recognizes a common law cause of action for fraud.

83.     Defendants falsely represent to consumers that they are American or associated with American

84.     Defendants are intending to defraud consumers with their false representation that they are American or associated with American.

85.     Consumers reasonably rely on Defendants' false and misleading statements, omissions and deceptive conduct, and provide Defendants with confidential and personal information as a result of being misled.

20

86.     The representations made by Defendants regarding their relationship with American are material, in that consumers would not provide sensitive information to Defendants if they had known that Defendants were not actually affiliated with American.

87.     As a direct and proximate cause of Defendants' intentional, wanton, willful and malicious misrepresentations, American and consumers have suffered damages in the amount to be proved at trial.

**COUNT VII**
**FEDERAL COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101**

88.     American repeats and realleges each and every allegation of Paragraphs 1 through 87 above, as if fully set forth herein.

89.     American has a copyright registration for the American Airlines Flight Symbol, Reg. No. VA0002130520 / 2016-06-03 ("American Copyright").

90.     American's copyright is valid and enforceable.

91.     Defendants had access to the American Copyright because it was published on American's website and on other places on the Internet.

92.     Defendants have directly copied American's copyrighted image and displayed it on the Fraudulent Website.

93.     In copying the American Copyright, Defendants have violated the copyright laws of the United States, specifically 17 U.S.C. § 101, et seq.

94.     Defendants have knowingly and willfully infringed upon the American Copyright.

95.     By reason and as a direct result of these acts of copyright infringement by Defendants, American has suffered great and irreparable damages, in an amount to be proved at trial.

## PRAYER FOR RELIEF

Plaintiff American prays for the following relief:

(A)   That this Court find that Defendants have unlawfully, and without authorization, infringed upon the American Marks, engaged in unfair competition, engaged cyberpiracy, caused dilution, all in violation of the Lanham Act, 15 U.S.C. § 1125, et seq.; infringed American's registered copyrights in violation of  17 U.S.C. § 101; engaged in Deceptive Acts and Practices; and engaged in fraud and misrepresentation in violation of the common law of New York.

(B)   That this Court order Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, by, through or under them be permanently enjoined from:

(1)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks;

(2)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in any manner likely to cause others to believe that Defendants are associated with, sponsored by, or endorsed by American;

(3)   passing off, inducing, or enabling others to pass off any services related to American which are not authorized by American;

(4)   making any false or misleading statements regarding American or their services, or the relationship between American and Defendants;

(5)   committing any other acts calculated to cause consumers or jobseekers to believe that Defendants are connected with American;

(6)   engaging in any activity constituting unfair competition with American;

(7)    engaging in any activity that is likely to dilute the distinctiveness of the American Marks;

(8)    assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (1) through (7);

(C)    Monetary relief in an amount to be fixed by the Court in its discretion as just, including:

(D)    All of Defendants' profits gained from Defendants' misappropriation of personal information obtained by Defendants from jobseekers attempting to apply for American and/or Envoy jobs;

(E)    Statutory damages, as provided in 15 U.S.C. § 1117(c) and (d), and 17 U.S.C. § 504(c).

(F)    All damages sustained by American as a result of Defendants' acts of infringement, unfair competition, dilution, and fraud including but not limited to ascertainable damages, costs, and attorney fees, including punitive damages;

(G)    All other further relief as this Court may deem just and proper.

American requests a trial by jury as to all issues triable to a jury.

Respectfully submitted,

AMERICAN AIRLINES, INC.

Dated: August 7, 2021

By:     /s/Daniel P. Filor

Daniel P. Filor
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Ave
New York, NY 10166
Telephone: (212) 801-9200
Email: filord@gtlaw.com

Nathan J. Muyskens,
*Pro Hac Vice* Admission to be Sought
GREENBERG TRAURIG, LLP
2101 L St. NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

Cameron M. Nelson
*Pro Hac Vice* Admission to be Sought
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400

Counsel for Plaintiff AMERICAN AIRLINES,
INC.